ATTORNEYS FOR APPELLANT
Adrian P. Smith
David S. Gladish
Highland, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA CIVIL LIBERTIES UNION
Michael K. Sutherlin
Nicholas D. Conway
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General

Thomas M. Fisher
Solicitor General

Frances Barrow
David L. Steiner
Deputy Attorney Generals
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 94S00-0505-CQ-243

JOHN CANTRELL,

*Appellant (Plaintiff below),*

v.

SONYA A. MORRIS,

*Appellee (Defendant below).*

On Certified Question from the United States District Court,
Northern District of Indiana, No. 2:04-CV-364-PPS-APR
The Honorable Andrew P. Rodovich, Judge

**June 21, 2006**

**Boehm, Justice.**

We respond to a question certified from the United States District Court for the Northern District of Indiana as follows: 1) we do not resolve whether Article I, Section 9 of the Indiana Constitution imposes any restrictions on government officials in dealing with political activity or affiliation of public employees; 2) to the extent that tort doctrines give a civil damage remedy to a public employee terminated for political activity or affiliation in violation of Article I, Section

9 of the Indiana Constitution, any such wrongful discharge claim is governed by the Indiana Tort Claims Act (ITCA); and 3) the Indiana Constitution does not of itself give rise to any such claim, and does not prevent the ITCA from applying to such a claim.

## Facts and Procedural History

Public defenders in the Criminal Division of the East Chicago City Court are appointed by the elected judge of that court. In 2002, former East Chicago Judge Eduardo Fontanez appointed John Cantrell. Judge Fontanez did not seek reelection in 2004 and Cantrell actively and openly supported the candidacy of Corinth Bishop II for the post. Sonya A. Morris won the election and took office on January 1, 2004, and terminated Cantrell thirty days later.

Cantrell sued Morris in the United States District Court for the Northern District of Indiana, alleging that she terminated his employment as public defender because of his support for her opponent. Cantrell asserted that the termination gave rise to a claim under 42 U.S.C. § 1983 and also independent claims for violation of his rights of free speech and association under both the federal and Indiana constitutions. Specifically, Cantrell asserted a right to recover compensatory and punitive damages for violation of his right to free speech guaranteed by Article I, Section 9 of the Indiana Constitution. He also asked for equitable relief in the form of an injunction ordering reinstatement.

Morris moved to dismiss the claim for violation of Section 9, arguing that an allegation of violation of the Indiana Constitution does not support a private cause of action for damages. The district court denied the defendant's motion to dismiss and certified the following question to this Court:

> Does a private right of action for damages exist under Article I, Section 9 of the Indiana Constitution, and if so, what are the elements of the action the plaintiff must prove?

The district court invited us to rephrase the question if we choose to do so, and we accept the invitation. We do not believe the question as phrased is susceptible of a generally applicable response. The question is limited to violations of Article I, Section 9, but even as so limited it embraces a broad range of potential claims. For example, we think the facts of this case and the government's ordering the closing of a newspaper do not necessarily invoke the same considera-

tions, but both would implicate Section 9 of the Indiana Constitution. Accordingly, we are reluctant to attempt to address this question without some factual context. We therefore narrow the question to the more specific one presented by the allegations of this complaint:

> Does an employee of a state or local governmental agency whose discharge is alleged to have violated rights of free speech guaranteed by Article I, Section 9 of the Indiana Constitution assert a claim for money damages against the unit of government or any individual responsible for the firing, and, if so, what is the source of that claim and what are its elements?

We understand the certified question as framed by the federal court to ask whether the Indiana Constitution gives rise to a civil damage remedy, as opposed to whether, if a violation of Section 9 is established, common law tort doctrines support a damage claim. Although some authorities seem to treat these two questions as one, as explained below we think these two issues are distinct.

We think the answer to the certified question, as rephrased, is informed by a number of distinct bodies of federal and state law. These include: 1) the federal law concerning the rights of public employees terminated for political activity or affiliation; 2) Indiana statutory provisions specifically addressing rights of court employees; 3) the Indiana Tort Claims Act and related immunity doctrines; 4) Indiana state employment law; 5) basic state law tort doctrines; and 6) the decisions of the Supreme Court of the United States and courts in other states recognizing a tort remedy for some violations of the federal or state constitution, and rejecting it for others.

## I. Public Employee Terminations Alleged to Violate Article I, Section 9

This Court has never considered whether Article I, Section 9 of the Indiana Constitution affords public employees any protection at all from termination for political affiliation or activity or for expressions of fact or opinion.[1] Determination of rights under the Indiana Constitution

---

[1] Both the Seventh Circuit and the Indiana Court of Appeals have predicted that we would adopt the federal approach to government employees seeking protection under Article I, Section 9 for expressions on matters of public concern, without regard to whether the employee's position is one of policymaking. Klunk v. County of Saint Joseph, 170 F.3d 772, 777-78 (7th Cir. 1999) upheld the termination of an employee of the probation department who intended to run for the local school board, an activity his employer determined was incompatible with the position. In Lach v. Lake County, 621 N.E.2d 357, 358 (Ind. Ct. App. 1993), trans. denied the Court of Appeals held that the suspension of a lieutenant in the Lake County Sheriff's Department for publishing letters questioning the relative qualifications of a candi-

may involve "the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind. 1996) (internal quotation marks omitted). Claims of First Amendment rights of public employees have arisen in a wide variety of contexts and have been held to depend on several different factors, including the nature of the statements made or activities conducted by the employee, the position held by the employee, and others.[2] We need not explore whether any similar rights are conferred by Article I, Section 9, and if so under what circumstances. For the reasons given below, we conclude that whether or not Article I, Section 9 of the Indiana Constitution affords any protection to public employees under some circumstances, a terminated employee has no private right of action for damages that arises under that Section.

We can resolve a few preliminary issues. First, Article I, Section 9 limits only governmental actions, not the acts of private citizens. A termination by a private employer, therefore, can have no Section 9 implications. Second, we do not agree that legislation is the only activity subject to Section 9. Just as the First Amendment to the United States Constitution provides that

---

date for public office and the sheriff, violated Article I, Section 9. Both cases turned less on affiliation than on content of the speech the employee had made (Lach) or might make (Klunk).

[2] Although the First Amendment protects many public employees from partisan termination, political affiliation or activity may be considered in employment decisions as to some public employees. In Elrod v. Burns, 427 U.S. 347, 375 (1976) the Supreme Court held that firings of low-level public employees because of their party affiliation could violate their First Amendment rights, but the controlling concurring opinion of Justice Stewart made clear that the holding was limited to "a nonpolicymaking, nonconfidential government employee." In Branti v. Finkel, 445 U.S. 507, 518 (1980) the Supreme Court explained Elrod and rephrased the issue as "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." The Court held in Branti that an assistant public defender whose duties were confined to representation of clients could not be fired for political reasons. This result turned importantly on the public defender's responsibilities to clients, as distinct from the broader public responsibilities of officials such as prosecutors. Id. at 519.

A related line of authority addresses termination of a public employee based on what the person said as opposed to whether the employee is of the same party or faction. Under the "Pickering/Connick" test, if the employee addresses a matter of public concern, it becomes necessary to balance the employee's interest in free expression against the government's interest, as an employer, in promoting efficient operation. Connick v. Myers, 461 U.S. 138, 142 (1983); Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968). Every issue in a public office is not a matter of public concern. Connick, 461 U.S. at 153-54.

Most recently, the United States Supreme Court held that although public employees retain their rights as citizens, the employee's statements in the course of the employee's duties are not protected by the First Amendment. Garcetti v. Ceballos, 126 S. Ct. 1951, 2006 U.S. LEXIS 4341, *21 (U.S. May 30, 2006).

4

"Congress shall make no law" abridging the right of free speech, Article I, Section 9 provides that "No law shall be passed" restraining free speech. Based on this language, the State argues that a violation of Section 9 requires the passage of a statute, so there can be no violation of this provision for terminating employment. We have held, however, that the executive branch is subject to Section 9. Whittington v. State, 669 N.E.2d 1363, 1370 (Ind. 1996) (an individual's right to speak was not violated when he was arrested for speaking loudly toward a private individual, not the police officers during a reported domestic dispute investigation); Price v. State, 622 N.E.2d 954, 960 (Ind. 1993) (police officers cannot materially burden an individual's opportunity to engage in political expression). Third, the termination in this case is by a judicial officer, but the challenged action is as an employer. As such it is subject to the same legal framework as an action of the executive branch, and is not entitled to the absolute immunity afforded judicial acts. See Forrester v. White, 484 U.S. 219, 229-30 (1988) (in a suit for damages under § 1983, a state court judge was not entitled to absolute judicial immunity for his decision to demote and discharge a subordinate court employee because such employment decisions are administrative.) "[I]t [is] the nature of the function performed, not the identity of the actor who performed it," that controls the degree of immunity given to the function. Id. at 229.

## II. Existing Remedies for Wrongful Discharge

Several existing Indiana statutory provisions and judicial precedents are relevant to the resolution of the question presented by the federal court.

### A. *Express Statutory Damage Remedies*

A few states have enacted statutes creating or regulating claims for damages for state constitutional torts.[3] Indiana, however, has no statutory provision comparable to 42 U.S.C. section 1983 creating an explicit civil remedy for constitutional violations by either individual officers or governmental entities.

---

[3] The first state civil rights statute was enacted in Massachusetts in 1979. It was known as "little 1983" or the "baby civil rights bill." See Mass. Gen. Laws Ann. Ch. 12, §§ 11H-I (West 1996). At least three other states have enacted civil rights statutes similar in scope to 42 U.S.C. § 1983. See Ark. Code Ann. § 16-123-101 to 108 (1995); Cal. Civ. Code § 52.1(b) (West 1997); Me. Rev. Stat. Ann. tit. 5, § 4682 (1996). Nebraska has enacted a limited right of action for violations of state constitutional rights. See Neb. Rev. Stat. § 20-148(a) (1996).

Indiana does have legislation expressly affirming the free speech rights of "court employees." Ind. Code § 33-23-12-1 through 33-23-12-3 (2004). Specifically, the General Assembly has acknowledged that "the right of every citizen to freely participate in political activity is inherent in the guarantee of free speech contained in Article 1, Section 9" and that "employees in the judicial branch of state government have the same rights guaranteed to all Indiana citizens." I.C. § 33-23-12-1(1), (4). The same chapter provides that "a court employee" may not be "discouraged from engaging in political activity." I.C. § 33-23-12-3(1). A "court employee" includes any "person employed by . . . a city or town court." I.C. § 33-23-12-2(10). Assuming that to terminate employment for political activity is to "discourage" political activity by the terminated employee and others, there is no express remedy for violation of this statute.

### B. *Individual Liability for Official Acts*

We have recognized that an officer of a private corporation may be personally liable for torts committed in the person's capacity as an officer or agent of the corporation. See, e.g., Comm'r Ind. Dep't of Envtl. Mgmt. v. RLG, Inc., 755 N.E.2d 556, 558 (Ind. 2001); State of Ind. Civil Rights Comm'n v. County Line Park, Inc., 738 N.E.2d 1044, 1050 (Ind. 2000) ("an officer is personally liable for the torts in which she has participated or which she has authorized or directed").

We do not appear to have addressed directly whether this doctrine applies to municipal corporations or other governmental entities. We have, however, addressed the common law immunity of individual public officers for tort liability. By addressing immunity of individual government employees, we implicitly assume that in the absence of immunity, ordinary principles of personal liability would apply. We have held that the qualified immunity applicable to 42 U.S.C. section 1983 claims applies equally to claims against government officials under state law. Foster v. Pearcy, 270 Ind. 533, 538, 387 N.E.2d 446, 450 (1979) ("the employment and supervision of deputies and employees in governmental offices, including the prosecutor's office, is a discretionary function" and as such the government official enjoys a qualified immunity for those acts); see also Earles v. Perkins, 788 N.E.2d 1260, 1267 (Ind. Ct. App. 2003); Adams v. Schneider, 71 Ind. App. 249, 255-56, 124 N.E. 718, 720 (1919) (in the absence of corruption an officer is not liable when exercising discretion); Ind. Legal Encyclopedia, Officers § 40 (West 2001).

The qualified immunity doctrine has been largely displaced by the Indiana Tort Claims Act (ITCA) immunity for discretionary acts described below.

C. *Wrongful Discharge*

Indiana law generally follows the employment at will doctrine that permits both the employer and the employee to terminate the employment at any time for a "good reason, bad reason, or no reason at all." See, e.g., Sample v. Kinser Ins. Agency, Inc., 700 N.E.2d 802, 805 (Ind. Ct. App. 1998). There are limits to this doctrine, however. Frampton v. Central Indiana Gas Co., 260 Ind. 249, 253-54, 297 N.E.2d 425, 428 (1973) held that an employee who has been terminated for filing a worker's compensation claim may sue for damages. In Holtz v. Board of Commissioners of Elkhart County, 560 N.E.2d 645, 647-48 (Ind. 1990), this Court held the plaintiff's claim was barred for failure to comply with the notice provisions of the ITCA. We did not address the more general issue of whether employment at will was limited by public policy exceptions, but Holtz seems to assume that the allegation that a county employee was terminated in retaliation for reporting to the state highway department flaws in the county's bridge inspection procedures stated a claim, albeit a claim governed by the ITCA. And McClanahan v. Remington Freight Lines, Inc., 517 N.E.2d 390, 393 (Ind. 1988), upheld a wrongful discharge claim for damages by a truck driver who alleged he was fired for refusing to violate Illinois state weight limits. These cases have been generalized to the proposition that an employee who has been fired for exercising a statutory right or for refusing to violate the law has a claim for wrongful discharge. Ind. Legal Encyclopedia, Employment § 45. Without embracing this general principle, we agree that to the extent Article I, Section 9 is relevant to any claim for discharge, the claim is simply a common law claim for wrongful discharge.

We have specifically held that a wrongful discharge claim is a tort under Indiana law governed by the ITCA if a governmental unit or official is the defendant. Holtz, 560 N.E.2d at 647-48.[4]

---

[4] The Indiana Tort Claims Act defines "loss" as "injury to or death of a person or damages to property." I.C. § 34-6-2-75. The parties agreed that the ITCA's definition of "loss" does not include a claim for retaliatory discharge because employees at will have no property interest in their jobs. Both parties cite the decisions of the Court of Appeals in Holtz v. Bd. of Comm'rs of Elkhart County, 548 N.E.2d 1220, 1221 (Ind. Ct. App. 1990), and Underwood v. City of Jasper Mun. Util. Sav. Bd., 678 N.E.2d 1280, 1284 (Ind.

7

D. *Indiana Tort Claims Act*

Unlike the Federal Tort Claims Act, the ITCA does not create causes of action and did not constitute a waiver of sovereign immunity. The ITCA was the legislature's response to Campbell v. State, 259 Ind. 55, 61-62, 284 N.E.2d 733, 736-37 (1972) which abolished sovereign immunity in Indiana for most purposes. See Brownsburg Cmty. Sch. Corp. v. Natare Corp., 824 N.E.2d 336, 345 (Ind. 2005); King v. Northeast Sec., Inc., 790 N.E.2d 474, 478 (Ind. 2003). In general, the ITCA requires notice of claims against governmental entities and public employees to be given soon after the event.[5] It immunizes both the governmental entity and its officers acting "within the scope of" their employment from liability in a number of areas. I.C. § 34-13-3-3. Notably Indiana Code section 34-13-3-3(7) confers immunity for "[t]he performance of a discretionary function." This provision governs claims subject to the ITCA, and operates similarly, but not identically, to the common law qualified immunity doctrine applicable to section 1983 claims. The immunity for discretionary acts insulates only those "significant policy and political decisions which cannot be assessed by customary tort standards." Peavler v. Bd. of Comm'rs of Monroe County, 528 N.E.2d 40, 45 (Ind. 1988). "Discretionary acts," for purposes of the ITCA, does not mean "mere judgment or discernment," but rather "refers to the exercise of political power which is held accountable only to the Constitution or the political process." Id.

We earlier held that employment decisions are "discretionary" under common law qualified immunity, and also observed that they would be so for purposes of the ITCA. Foster v. Pearcy, 270 Ind. 533, 538, 387 N.E.2d 446, 450 (1979) ("While we base our decision primarily on the common law immunity traditionally accorded to prosecuting attorneys, we also note that

Ct. App. 1997), trans. denied, which relied on the Court of Appeals decision in Holtz. For reasons we cannot explain, until very recently the Lexis report of the Court of Appeals decision in Holtz did not reveal the decision of this Court granting transfer, thereby vacating the Court of Appeals opinion, and reaching the opposite result. The Court of Appeals in other recent cases has recognized this anomaly and held the ITCA applicable to all torts committed against persons or property. See Irwin Mortgage Corp. v. Marion County Treasurer, 816 N.E.2d 439, 446 (Ind. Ct. App. 2004); Ind. Dep't of Transp. v. Shelly & Sands, Inc., 756 N.E.2d 1063, 1077 (Ind. Ct. App. 2001), trans. denied; Burke v. Bd. of Dir. of the Monroe County Pub. Library, 709 N.E.2d 1036, 1041-42 (Ind. Ct. App. 1999), vacated in part on reh'g, 711 N.E.2d 1288, trans. denied, 726 N.E.2d 314 (Ind. 1999).

[5] The Indiana Tort Claims Act provides that a claim against the State is "barred unless notice is filed with the attorney general or the state agency involved within two hundred seventy (270) days after the loss occurs." I.C. § 34-13-3-6(a). A claim against a political subdivision is barred unless notice is filed with the governing body of that political subdivision and the Indiana political subdivision risk management within 180 days after the loss occurs. I.C. § 34-13-3-8(a).

the duty to inform the public can be characterized as a discretionary function and thus would fall within the absolute immunity granted under the Indiana Tort Claims Act."). Several years after Foster, Peavler made clear that the immunity for discretionary acts attaches only to those "significant policy and political decisions which cannot be assessed by customary tort standards." 528 N.E.2d at 45. We think Peavler dictates that if there is a claim for termination in violation of free speech rights, whether based on the state or Federal Constitution, it is subject to the same standard.

The net result of the discriminating act immunized under the ITCA as applied to public employee discharge claims is a retention of the substance of the common law doctrine of qualified immunity. In Kellogg v. City of Gary, 562 N.E.2d 685, 703 (Ind. 1990) we applied qualified immunity to a claim under 42 U.S.C. section 1983. Although Kellogg was applying federal law, its description of the qualified immunity doctrine is equally valid as a description of "discretionary acts" in the hiring and firing of public employees:

> Nonjudicial public officers of course are not required to err at their own risk; they are protected by an immunity, albeit in most cases a narrower one. Scheuer v. Rhodes, 416 U.S. 232 (1974). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A public official may, however, be held liable if he violated constitutional or statutory rights that were clearly established at the time he acted such that a reasonably competent official should have then known the rules of law governing his conduct, unless the official pleads and proves in his defense extraordinary circumstances by virtue of which he neither knew nor should have known of the relevant legal standard.

562 N.E.2d at 703 (emphasis in original) (quoting the standard for qualified immunity as set forth in Thomas v. Sams, 734 F.2d 185, 190 (5th Cir. 1984)). Kellogg also quoted the standard for qualified immunity as stated by the U.S. Supreme Court:

> Whether an official may prevail in his qualified immunity defense depends upon the "objective reasonableness of his conduct as measured by reference to clearly established law." No other "circumstances" are relevant to the issue of qualified immunity.

Id. at 703-04 (quoting Davis v. Scherer, 468 U.S. 183, 191 (1984)). See also Kiddy-Brown v. Blagojevich, 408 F.3d 346, 352 (7th Cir. 2005) ("Government officials performing discretionary

functions are entitled to qualified immunity from suit 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'").

The Court of Appeals in Earles expressly adopted the Seventh Circuit's two-step inquiry for determining whether a government official's conduct violated clearly established law and therefore lost its immunity. 788 N.E.2d at 1266-67. First, the plaintiff must show that "the law was clear in relation to the specific facts confronting the public official when he or she acted." Id. (citing Biddle v. Martin, 992 F.2d 673, 675 (7th Cir. 1993)). Second, courts should "evaluate the objective reasonableness of the official's conduct" considering "whether reasonably competent officials would agree on the application of the clearly established right to a given set of facts." Id. at 1267.

In short, as we stated in Foster, as applied to claims for wrongful discharge, we think this body of law remains subject to the "discretionary act" immunity of the ITCA. Finally, in most circumstances the ITCA provides practical immunity to the government officer in his or her individual capacity by providing that the governmental unit is to defend and pay any judgment for actions taken within the scope of employment, including actions not immunized as "discretionary" under Indiana Code section 34-13-3-3(7). I.C. § 34-13-3-5(b), (d).[6]

E. *Damage Claims for Wrongful Discharge in Violation of Section 9*

Under traditional tort doctrines a violation of a statutory or constitutional obligation may give rise to a civil damage claim. This doctrine is expressed in section 874A of the Second Re-

---

[6] The ITCA explicitly immunizes government officials from personal civil liability for acts that the governmental entity "answers the complaint" by responding that the individual acted outside the scope of the individual's employment unless:

> an act or omission of the employee that causes a loss is:
> > (1) criminal;
> > (2) clearly outside the scope of the employee's employment;
> > (3) malicious;
> > (4) willful and wanton; or
> > (5) calculated to benefit the employee personally.

I.C. § 34-13-3-5(c). A complaint against an employee personally must contain a "reasonable factual basis supporting the allegations." Id. A complaint against a government employee that does not allege a causal relationship between the employee's employment and the plaintiff's injury falls outside the ITCA. Burke, 709 N.E.2d at 1040.

10

statement of Torts, which supports a common law tort damage remedy for some, but not all constitutional violations.[7] The Restatement provides:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

Restatement (Second) of Torts § 874A (1979). A comment to this section of the Restatement explains that "legislative" provisions include constitutional provisions. Id. at cmt. (a). This approach is similar to that of the seminal constitutional tort case, Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), which cited earlier cases upholding implied civil damage remedies for violations of federal statutes.[8] In order to invoke this doctrine, a plaintiff must be a member of the class of citizens the statute or constitutional provision is designed to protect.[9] Whether a civil damage claim is available is deemed a matter of legislative intent. See Lachenman v. Stice, 838 N.E.2d 451, 461 (Ind. Ct. App. 2005), trans. denied ("The unexcused or unjustified violation of a duty prescribed by a statute or ordinance constitutes negligence per se if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and the statute or ordinance is intended to protect against the risk of the type of harm which has occurred as a result of its violation.").

Here, the class of persons protected by Section 9 is all persons. Every individual and the community as a whole benefits from the free exchange of ideas and the ability of all to participate in the political process. On the other hand, early Indiana history is replete with examples of

---

[7] See, e.g., Binette v. Sabo, 710 A.2d 688, 693-94 (Conn. 1998); Dorwart v. Caraway, 58 P.3d 128, 136 (Mont. 2002); Brown v. State, 674 N.E.2d 1129, 1138 (N.Y. 1996); Shields v. Gerhart, 658 A.2d 924, 932 (Vt. 1995).

[8] See Nixon v. Condon, 286 U.S. 73 (1932) and Nixon v. Herndon, 273 U.S. 536, 540 (1927) (civil damage remedy for violation of federal statute forbidding racial discrimination at the voting polls); see also Swafford v. Templeton, 185 U.S. 487 (1902) and Wiley v. Sinkler, 179 U.S. 58 (1900) (civil damage action for unlawful rejection of plaintiffs' votes at federal elections).

[9] See Right Reason Publ'ns v. Silva, 691 N.E.2d 1347, 1352 (Ind. Ct. App. 1998) ("When a civil tort action is premised upon violation of a duty imposed by statute, the initial question to be determined by the court is whether the statute in question confers a private right of action." In the case of a statute, this determination begins with an examination of legislative intent.). See also City of Gary v. Smith & Wesson, 801 N.E.2d 1222, 1245 (Ind. 2003).

politically motivated job termination or replacement,[10] and legislative recognition of free expression rights of public employees is relatively recent. Responses to certified questions run the risk of excessively broad declarations unanchored by the facts of a specific case.[11] We think resolution of this issue in the abstract is particularly inappropriate because of the wide range of situations in which it may arise. We therefore explicitly leave open the extent to whether public employees enjoy Indiana constitutional protection against employment action. To the extent there is any such protection, however, termination of an employee for exercise of a constitutional right is entitled to no lower status in tort law than termination for exercise of a statutory right. This does not constitute recognition of an implied tort arising under the Constitution. Rather it recognizes that the already established tort of wrongful discharge can be based on termination for exercise of a constitutional as well as a statutory right. Otherwise stated, a constitutional provision can supply the duty required for a conventional tort claim.

The General Assembly may not invade the constitutional rights of public employees, but it may limit the circumstances under which civil damages may be recovered for violation of those rights. As the Restatement noted, the legislative branch can establish, modify, or abolish remedies for torts. Restatement (Second) of Torts § 874A at cmt. (b). The Indiana legislature has done that in the ITCA as to claims against governmental units or government employees.

### III. Constitutional Remedies

We turn now to the question whether the Indiana Constitution itself provides a damage remedy for a public employee terminated in violation of Section 9.

---

[10] Limiting terms of elected officials was advocated in the 1851 Constitution Convention as a means of assuring periodic purging of patronage employees. 2 Report of the Debates & Proceedings of the Convention for the Revision of the Constitution of the State of Indiana, 1310 (1850) (remarks of Delegate Holman).

[11] Citizens Nat'l Bank of Evansville v. Foster, 668 N.E.2d 1236, 1241-42 (Ind. 1996) ("[C]ertified questions almost inevitably conflict with the longstanding policy of judicial restraint in constitutional matters. . . . [S]uch questions tend to separate the constitutional claim from the specifics of the case. . . . Application of the law to case-specific facts has always been relevant to this Court's constitutional jurisprudence, and though our consideration of certified questions promotes the accurate application of state law in federal courts, we also acknowledge the shortcomings of such proceedings."); see also Matter of Zumbrun, 626 N.E.2d 452, 455 (Ind. 1993); Bureau of Motor Vehicles v. Scott, 497 N.E.2d 557, 559 (Ind. 1986); see generally Randall T. Shepard, Is Making State Constitutional Law through Certified Questions a Good Idea or a Bad Idea?, 38 Val. U. L. Rev. 327 (2004).

A. *Explicit Constitutional Remedies*

There is no explicit language in the Indiana Constitution providing any specific remedy for violations of constitutional rights. Cantrell argues that Article I, Section 12 evidences a disposition on the part of the framers to supply a civil damage remedy. That Section guarantees that a remedy "by due course of law" is available to anyone "for injury done to him in his person, property, or reputation" and that "[j]ustice shall be administered . . . completely, and without denial." But Article I, Section 12 does not specify any particular remedy for any particular wrong. Rather, it leaves the definition of wrongs and the specification of remedies to the legislature and the common law.[12] Nor does Section 12 mandate jurisdiction over any particular statutory or constitutional claim.[13] We agree that the Takings Clause creates within itself the requirement of just compensation and that Article I, Section 12 constitutionally mandates judicial enforcement of that remedy. But remedies for Article I, Section 9 are not so clearly defined. Injunctions,[14] immunity from civil liability,[15] and immunity from prosecution[16] have already been identified as available remedies to vindicate Section 9 rights. In short, whether a civil damage remedy exists under Section 9, and if so, against whom, and for what types of violation are not resolved by the text of the Constitution or by any Indiana precedent.

B. *Implicit Causes of Action for Damages*

1. *Self-Executing Provisions*

---

[12] <u>McIntosh v. Melroe Co.</u>, 729 N.E.2d 972, 978 (Ind. 2000) ("the General Assembly's abrogation of the common law of product liability through the statute of repose does not run afoul of the 'substantive' due course of law provision of Article I, Section 12.").

[13] <u>See</u> <u>Blanck v. Ind. Dep't of Corrections</u>, 829 N.E.2d 505, 511 (Ind. 2005) (rejecting an implied cause of action under Section 12 because "[i]f the Open Courts Clause, either standing alone or as kind of a jurisdiction-conferring mechanism for statutory rights, entitles Blanck to judicial review, then it would also entitle any person with appropriate standing to judicial review to enforce the rights provided by any statute," which would implausibly foreclose the need "to analyze whether the Legislature intended that a private right of action be inferred from a statute.").

[14] <u>Fair Share Org. v. Mitnick</u>, 245 Ind. 324, 327-28, 198 N.E.2d 765, 766 (1964) (upholding an order permanently enjoining appellant from picketing appellee's place of business despite Article I, Section 9).

[15] <u>Journal-Gazette Co., Inc. v. Bandido's, Inc.</u>, 712 N.E.2d 446, 452 (Ind. 1999) (clear evidence of actual malice required for a defamation suit based on comments of public interest).

[16] <u>Price</u>, 622 N.E.2d at 960 (the State may not punish expression when doing so would impose a material burden upon a core constitutional value).

The Indiana Civil Liberties Union, as Amicus, argues that at a minimum a damage remedy is implied for violations of constitutional provisions that are "self-executing," i.e. provisions that supply "a sufficient rule by means of which the right given may be enforced and protected, or the duty imposed may be enforced," as opposed to those that "merely indicate principles, without laying down rules by means of which those principles may be given the force of law."[17] We have already observed the difficulty of addressing certified questions divorced from factual contexts. Even if we were clear as to the precise content of the concept of a self-executing provision, embracing a broad principle, such as drawing a line on that basis, presents that problem in an extreme form. We therefore decline this request to expound more generally on the availability of a civil damage remedy.

2. *Indiana Jurisprudence to Date*

The parties cite authorities in which violations of constitutional provisions have supported civil damage remedies, but none of these supports the general proposition that the Indiana Constitution itself provides a damage remedy for a violation of its provisions. The Court of Appeals has suggested that a state constitutional requirement of prompt arraignment would furnish support for the prisoner's tort claim for false imprisonment. Matovina v. Hult, 125 Ind. App. 236, 245, 123 N.E.2d 893, 898 (1955). This decision seems to rest essentially on common law tort principles. In Bayh v. Sonnenburg, 573 N.E.2d 398 (Ind. 1991), this Court vacated an opinion of the Court of Appeals that had affirmed a 28 million dollar judgment in favor of mental institution patients who performed manual labor at the institution. See Orr v. Sonnenburg, 542 N.E.2d 201, 205 (Ind. Ct. App. 1989). We held that this labor did not constitute "particular services" subject to the Takings Clause of Article I, Section 21. Bayh, 573 N.E.2d at 414. We expressly did not address "the distinction between an award of damages and back wages." Id. at 421. It seems that some form of payment of money was assumed to be recoverable if the plaintiffs had rendered "particular services," but we think this turns on the peculiar language of the

---

[17] Cooley, Constitutional Limitations at 121 (7th ed. 1903), quoted in Older v. Super. Ct., 109 P. 478, 482 (1910); accord State v. Rodrigues, 629 P.2d 1111, 1114-15 (Haw. 1981). See also Corum v. Univ. of N.C., 413 S.E.2d 276, 289 (N.C. 1992) (since the right of freedom of speech is self-executing it must therefore support a cause of action for damages); Shields, 658 A.2d at 928 ("A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, . . . and it is not self-executing when it merely indicates principles, . . . In short, if complete in itself, it executes itself." (quoting Davis v. Burke, 179 U.S. 399, 403 (1900))).

Takings Clause, which itself requires "just compensation," and does not have any more general implication for constitutional violations.

Cantrell argues that the Court of Appeals recognized an implied private right of action under Article I, Section 9 of the Indiana Constitution in Lach v. Lake County, 621 N.E.2d 357, 358-60 (Ind. Ct. App. 1993), trans. denied. The Indiana Court of Appeals there held "the free speech guarantees of the Constitutions of Indiana and the United States demand that a governmental body demonstrate the necessity for squelching speech matters of public concern. . . . Indiana's Constitution, statutory provisions, and common law require a finding that Lach's statements constituted protected speech." Id. at 360. But the remedies for violation of that right were based on the statute governing sheriff's employees, Indiana Code section 36-8-10-11, and that decision did not address any implied constitutional remedy.

The federal district courts in Indiana have divided on the broad question of whether a right of action for damages is implied for violations of the Indiana Constitution. Relying on decisions from the Indiana Court of Appeals, the Northern District of Indiana concluded that a claim of discriminatory zoning based on animus against drug users could support a damage claim for violation of the equal privileges and immunities clauses of Article I, Section 23 of the Indiana Constitution. See Discovery House, Inc. v. Consol. City of Indianapolis, 43 F. Supp. 2d 997, 1004 (N.D. Ind. 1999). One year later, the Southern District of Indiana questioned Discovery House and certified to this Court the question whether a violation of the search and seizure provisions of Article I, Section 11 of the Indiana Constitution gives rise to a private right of action for damages. See Turner v. Marion County Sheriff Dep't, 94 F. Supp. 2d 966, 988 (S.D. Ind. 2000). That case was settled before this Court reached the issue. Three more recent cases in the Southern District of Indiana have found no civil damage remedy for searches and seizures in violation of the Indiana Constitution. In each of these cases the plaintiff alleged facts that also constituted violation of the Fourth Amendment.[18]

---

[18] See Raines v. Chenoweth, 2004 U.S. Dist. LEXIS 19575, *16 (S.D. Ind. June 29, 2004) (court did not believe this Court would expansively infer the existence of a monetary damage claim for an alleged abuse of police power under Article I, Sections 11 and 15 of the Indiana Constitution); Malone v. Becher, 2003 U.S. Dist. LEXIS 15790, *54 (S.D. Ind. Aug. 29, 2003) ("If such a step is to be taken, it will need to be taken by the Indiana courts, not by a federal court whose duty is to apply existing Indiana law"); Estate of O'Bryan v. Town of Sellersburg, 2003 U.S. Dist. LEXIS 13757, *11-12 (S.D. Ind. July 2, 2003) (finding

C. *Federal Constitutional Torts*

It is now established that violations of federal constitutional rights by federal officers may give rise to civil liability under some circumstances. This implied federal "constitutional tort" was first recognized by the Supreme Court of the United States in <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). In that case the Supreme Court upheld an implied civil action for damages against federal officers alleged to have engaged in a search and seizure in violation of a citizen's rights under the Fourth Amendment. Specifically, agents of the Federal Bureau of Narcotics had unlawfully entered the plaintiff's home and arrested him without a warrant or probable cause. The Court acknowledged that Congress had never provided for a private right of action against federal officers, and that "the Fourth Amendment does not in so many words provide for its enforcement by award of money damages for the consequences of its violation." <u>Id.</u> at 396. Nevertheless, relying largely on earlier decisions finding implied private damage actions for violation of various federal statutes, and finding "no special factors counseling hesitation in the absence of affirmative action by Congress," the Court held that the plaintiff was "entitled to recover money damages for any injuries he [had] suffered as a result of the agents' violation of the [Fourth] Amendment." <u>Id.</u> at 396, 397.

Since <u>Bivens</u>, implied federal civil damage remedies for constitutional violations have been found in few other circumstances. In <u>Davis v. Passman</u>, 442 U.S. 228 (1979), the plaintiff alleged that her employer, a former United States congressman, discriminated against her on the basis of sex in violation of the due process clause of the Fifth Amendment. <u>Id.</u> at 230-31. The Court upheld a right of action chiefly because the plaintiff lacked any other remedy, adopting language first appearing in Justice Harlan's concurrence in <u>Bivens</u>: "For Davis, as for Bivens, 'it is damages or nothing.'" <u>Id.</u> at 245 (citing <u>Bivens</u>, 403 U.S. at 410 (Harlan, J., concurring in judgment)).

In <u>Carlson v. Green</u>, 446 U.S. 14 (1980), the plaintiff sued on behalf of the estate of her deceased son, alleging that he died as a result of violations by federal prison officials of his "due process, equal protection, and Eighth Amendment" rights. <u>Id.</u> at 16. The Court upheld a right of

no private right of action for damages under the Indiana Constitution against a city and its police officers when an officer unlawfully entered plaintiff's residence and shot him several times, because this Court had never recognized such a claim).

16

action against individual prison officials where the plaintiff's only alternative was a Federal Tort Claims Act (FTCA) claim against the United States. Id. at 18-23. First, the Court found it "crystal clear" that Congress intended the FTCA and Bivens to serve as "parallel" and "complementary" sources of liability. Id. at 20. The Court pointed to the legislative history of the 1974 amendment to the FTCA, which created a cause of action against the United States for the intentional torts of federal law enforcement officials, 28 U.S.C. § 2680(h), which demonstrated the Congressional assumption that a Bivens claim might be asserted against the individual officials. The Court noted that a Bivens action might be defeated in two situations: 1) "when defendants demonstrate 'special factors counseling hesitation in the absence of affirmative action by Congress,'" and 2) "when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." Id. at 18-19 (emphasis in original) (quoting Bivens, 403 U.S. at 396, 397, and Davis, 442 U.S. at 245-47). The Court in Carlson however found that neither situation existed. The Court reasoned that the threat of suit against the United States under the FTCA was insufficient to deter the unconstitutional acts of individuals, and concluded that a damage recovery against individuals was "a more effective deterrent than the FTCA remedy." Id. at 21.

Carlson also identified other factors which supported a damage claim against individuals as a deterrent to unlawful action. These included the availability of punitive damages in a Bivens action contrasted with the statutory prohibition against punitive damages in an FTCA action, and the unavailability of a jury trial in an FTCA action. The Court also noted that a claim under the FTCA was controlled by state law, which was inconsistent with the need for uniform law governing remedies for violation of constitutional rights. Id. at 21-24. Carlson seems to represent the high water mark of expansion of implied federal constitutional torts. Since that decision the Supreme Court has consistently refused to find an implied civil damage remedy for violation of constitutional rights in other circumstances. In Bush v. Lucas, 462 U.S. 367 (1983), the plaintiff was an aerospace engineer employed by NASA who had sought review by the Civil Service Commission of two reassignments. Id. at 369. While his administrative appeals were pending, he made several public statements that were highly critical of the agency. In response, a director demoted him, but the review board recommended reinstatement to his former position with back pay. The plaintiff then brought a civil cause of action for damages against the director individually. The Supreme Court assumed, without deciding, that the personnel action violated

the plaintiff's First Amendment rights. Id. at 372. The Court also recognized that Congress had neither provided for such a damage claim nor expressly provided that the administrative remedy was the only mode of redress. Id. at 372-73. Ultimately, the Court held that the administrative procedure provided meaningful redress and obviated the need to fashion a new judicially crafted cause of action.[19] Id. at 378 n.14, 386-88. The Court expressly deferred to Congress' institutional competence in crafting appropriate relief for aggrieved federal employees as a "special factor[] counseling hesitation in the creation of a new remedy," noting that "Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees." Id. at 380, 389. Thus, in Bush the Court retreated from the view expressed in Carlson that a claim under the FTCA against the government was an insufficient deterrent and therefore a Bivens action against individual officials was appropriate.

The Supreme Court's reluctance to find implied damage remedies was further reflected in Chappell v. Wallace, 462 U.S. 296, 305 (1983) ("enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations," even where the defendants were alleged to have been civilian personnel), and United States v. Stanley, 483 U.S. 669, 684 (1987) (extending Chappell to disallow a Bivens action where a serviceman's injuries arose out of activity "incident to service"). Similarly, in Schweiker v. Chilicky, 487 U.S. 412 (1988), the Court rejected a damages action against individual government employees alleged to have denied the plaintiff due process in handling Social Security claims. In Schweiker, the Court observed that it had "responded cautiously to suggestions that Bivens remedies be extended into new contexts." Id. at 421. The Court explicitly rejected the claim that a Bivens remedy should be implied simply because there is no other means to challenge a constitutional deprivation in federal court: "[t]he absence of statutory relief for a constitutional violation . . . does

---

[19] The Supreme Court described the current state of implied civil damage remedies for constitutional violations as follows:

> The federal courts' statutory jurisdiction to decide federal questions confers adequate power to award damages to the victim of a constitutional violation. When Congress provides an alternative remedy, it may, of course, indicate its intent, by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself, that the courts' power should not be exercised. In the absence of such a congressional directive, the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counseling hesitation before authoring a new kind of federal litigation.

Bush, 462 U.S. at 378.

not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." Id. at 421-22. The Court held that administrative remedies may be sufficient and a legislative decision to forego a damage remedy should be honored. Id. at 425-27. "So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 69 (2001) (citing Schweiker, 487 U.S. at 425-27). Thus, congressional inaction that is not inadvertent is among the "special factors counseling hesitation" to recognize an implied civil damage remedy. Schweiker, 487 U.S. at 423.

More recently, in FDIC v. Meyer, 510 U.S. 471 (1994) the Court rejected a Bivens claim against a federal agency, even though Congress had waived sovereign immunity. Meyer emphasized that "the purpose of Bivens is to deter *the officer*," not the agency. Id. at 485 (emphasis in original). The Court reasoned that if given the choice, plaintiffs would sue a federal agency instead of an individual who could assert qualified immunity as an affirmative defense, so to allow a Bivens claim against federal agencies "would mean the evisceration of the Bivens remedy, rather than its extension." Id. The Court also noted that "special factors" counseled hesitation in light of the "potentially enormous financial burden" that agency liability would entail. Id. at 486.[20]

D. *Constitutional Torts in Other States*

In the wake of Bivens, several states have found violations of various state constitutional rights to support private civil actions for damages, and a roughly equal number have rejected such an action.[21] Several jurisdictions have followed the approach used by the Bivens line of cases, and have upheld or rejected an implied civil tort based on the presence or absence of alter-

---

[20] Similarly, in Malesko, the Court refused to extend a Bivens remedy to allow recovery against a private corporation operating a halfway house under contract with the Bureau of Prisons. 534 U.S. at 71. The Court emphasized that the purpose of Bivens is to deter individual federal officers from committing constitutional violations and that where Congress has provided for some avenue of relief and remedy that courts should not create a new remedy. Id. at 70, 73-74. The Court held that since the plaintiff was "not a plaintiff in search of a remedy as in Bivens and Davis" nor did the plaintiff "seek a cause of action against an individual officer, otherwise lacking, as in Carlson," that the plaintiff sought an extension of Bivens "to contexts that would not advance Bivens' core purpose of deterring individual officers from engaging in unconstitutional wrongdoing." Id. at 74.

[21] Jennifer Friesen, State Constitutional Law: Litigating Individual Rights, Claims, and Defenses 7-7 (3d ed. 2000).

native remedial schemes.[22]  In most cases where a remedy is upheld, it is against the State or its agency, not individual officers.  At least two states have cited the availability of compensation under the state constitution's "takings" clause as supporting damage claims for violation of other constitutional provisions.[23]  Other jurisdictions have rejected constitutional tort claims against either the State or its officials in their official capacity on the ground of sovereign immunity.[24] Some states have declined to imply a damage remedy for a constitutional tort on the ground of separation of powers, concluding that recognition of any such claim is up to the legislature.[25] Yet others have found that a constitutional violation is sufficient to supply the breach of duty to support a common law tort:  "there is no need to imply a new right of action because, under the common law, there already exists an action for damages to remedy violations of constitutional

---

[22] See, e.g., Dick Fischer Dev. No. 2, Inc. v. Dep't of Admin., 838 P.2d 263, 268 (Alaska 1992) ("We are . . . hesitant to extend the Bivens decision, and will not allow a claim for damages except in cases of flagrant constitutional violations where little or no alternative remedies are available"); Phillips v. Youth Dev. Program, Inc., 459 N.E.2d 453, 457 (Mass. 1983) (noting in dicta that when there are no other remedies for an alleged dismissal from employment without due process, it is appropriate for the courts to imply one under the state constitution); Corum, 413 S.E.2d at 289 ("in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution"); Provens v. Stark County Bd. of Mental Retardation & Dev. Disabilities, 594 N.E.2d 959, 961-62 (Ohio 1992) (public employees have no right of action against their public employer for alleged violations of free speech when there are adequate statutory remedies); Shields, 658 A.2d at 934 (private civil action for damages not available against a state agency and its personnel because an existing administrative scheme created a reasonably adequate remedy).

[23] See, e.g., Widgeon v. E. Shore Hosp. Ctr., 479 A.2d 921, 929 (Md. 1984) (involuntary placement in a state mental hospital); accord Corum, 413 S.E.2d at 291 (relying on common law remedies).

[24] See, e.g., Figueroa v. Hawaii, 604 P.2d 1198, 1207 (Haw. 1979) (the Hawaii Tort Liability Act does not provide for money damages against the State for violation of state constitution); Rockhouse Mountain Prop. Owners Ass'n, Inc. v. Conway, 503 A.2d 1385, 1385 (N.H. 1986) (immunity for a town and its officials in the exercise of a legislative, judicial, or executive planning function involving policy decisions cuts against the creation of a state cause of action); Livingood v. Meece, 477 N.W.2d 183, 191 (N.D. 1991) (holding that state sovereign immunity bars state constitutional claims against state officials acting in their official capacities).  But see Smith v. Dep't of Pub. Health, 410 N.W.2d 749, 751 (Mich. 1987) (holding that where it is alleged that the State has violated rights conferred by the Michigan constitution, governmental immunity is not available in state court action, and a claim for damages against the State "arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases"), aff'd, 491 U.S. 58 (1989).

[25] See, e.g., Moody v. Hicks, 956 S.W.2d 398, 402 (Mo. Ct. App. 1997) ("Whether such a cause of action should be permitted [against city police officers] is best left to the discretion of the General Assembly."); Provens, 594 N.E.2d at 961-62 (holding that the legislature was the more appropriate body to create remedies for employment discrimination based on race by a county board); City of Beaumont v. Bouillion, 896 S.W.2d 143, 149 (Tex. 1995) (holding that absent express authority from the legislature, it would not recognize an implied private cause of action for damages against a city police department, under the free speech and free assembly protections of the Texas Constitution for being "constructively discharged" after holding a press conference to report official misconduct in departmental promotions).

rights." <u>Widgeon v. E. Shore Hosp. Ctr.</u>, 479 A.2d 921, 929 (Md. 1984). These decisions have arisen in a wide variety of contexts. As already observed, we think generalizing on the availability of a damage remedy for constitutional violations is not possible, and we confine our response to wrongful discharge for political activity or affiliation in violation of Section 9.

E. *Federal and State Constitutional Torts Compared*

We think there are important differences between federal and state constitutions, insofar as implied damage remedies are concerned. In the case of a federal "constitutional tort" the question whether the Constitution itself is the source of a civil damage remedy is of paramount significance because federal court jurisdiction typically turns on whether the claim arises under federal law. Indeed, in <u>Bivens</u>, the defendants conceded that a state law tort remedy might lie for the acts of federal officials conducting a search in violation of the Fourth Amendment. 403 U.S. at 390-91. If the same is true of a violation of a state constitutional right, it is of little practical significance whether the damage remedy arises under the state Constitution itself or under state common law tort doctrines. In either case, the claim is cognizable and indisputably arises under state law.

There is a second difference between federal and state Constitutions that derives from the structure of our federal system. Ultimately, whether the Federal Constitution itself gives rise to a damage remedy turns significantly on the need for such a remedy to protect the substantive constitutional right. A principal reason to infer a federal constitutional civil damage remedy is the need to vindicate the constitutional rights in the absence of other available remedies. In Justice Harlan's oft-quoted phrase, <u>Bivens</u> is justified because it is "damages or nothing." <u>Bivens</u>, 403 U.S. at 410 (concurring in judgment). If state tort law is generally available even if restricted by the ITCA, it is unnecessary to find a state constitutional tort. Similarly, the other reasons cited in <u>Bivens</u> and its progeny are largely inapplicable to the implied state constitutional tort. Unlike the FTCA, a jury trial is available for tort claims against the State, a governmental unit or public official. We have no legislative history similar to the 1974 FTCA amendments recognizing an independent constitutional tort remedy. <u>See</u> 28 U.S.C. § 2680 (h). Indeed, to the extent the General Assembly has acted it suggests the contrary. And a state constitutional claim raises no need for nationwide uniformity similar to that required by the FTCA.

Carlson also identified the unavailability of punitive damages in the FTCA as another reason to find an implied constitutional tort. 446 U.S. at 22. The ITCA imposes statutory limitations on compensatory damages and, like the FTCA, prohibits an award of punitive damages against a governmental entity or an employee of a governmental entity acting within the scope of employment. I.C. § 34-13-3-4(b); cf. 28 U.S.C. § 2674. We do not believe that statutory limits on damages and the unavailability of punitive damages are unconstitutional constraints on the damage remedy for wrongful discharge in violation of the Indiana Constitution. Indeed, as explained in Cheatham v. Pohle, 789 N.E.2d 467, 472-73 (Ind. 2003), as a general proposition we think the legislature is free to modify or restrict punitive damages as it sees fit. We do not regard the tort alleged in this case to be one that requires any unique treatment. Of course, if the legislature believes that a broader remedy is needed to redress that constitutional violation or others, then it is free to provide one.

Indiana law imposes a number of legislative constraints on civil damages against governmental units and individual government officials. The question thus becomes whether anything in the state Constitution precludes application of these restraints to common law claims for violations of state constitutional rights. By reason of the Supremacy Clause and principles of federalism, to the extent the Federal Constitution prohibits conduct by state officers, state laws are ineffective to shield the officers from federal remedies. See Felder v. Casey, 487 U.S. 131, 141 (1988) (42 U.S.C. § 1983); Martinez v. California, 444 U.S. 277, 284 (1980) ("It is clear that the California immunity statute does not control this claim [42 U.S.C. § 1983] even though the federal cause of action is being asserted in the state courts."). Specifically, the ITCA does not apply to claims based on 42 U.S.C. § 1983.[26] Kellogg, 562 N.E.2d at 688 (citing Felder). But state law remedies for state constitutional violations are subject to no comparable restriction imposed by a superior sovereign.

---

[26] It is now well established that section 1983 creates "a species of tort liability" in favor of persons deprived of their federal constitutional rights. See Carey v. Piphus, 435 U.S. 247, 253 (1978) (quoting Imbler v. Pachtman, 424 U.S. 409, 417 (1976)). Section 1983 permits recovery against individual officers and units of local government, but not against the State itself. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (Neither states, nor state officials acting in their official capacities, are "persons" susceptible to damage suits under section 1983. This precludes a suit in state court against a State for damages under section 1983); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984) (States are immune from suit under section 1983 in federal court because of the Eleventh Amendment).

22

Unless the state Constitution precludes statutory limitations of remedies for constitutional violations, the damage remedy is itself subject to those statutory restrictions. We have observed that assessing punitive damages against a governmental entity places the burden ultimately on innocent taxpayers. See Brownsburg Comm'ty Sch. Corp., 824 N.E.2d at 345-46. The same is true of a government employee who acts within the scope of employment because in Indiana that employee is statutorily entitled to be indemnified by the governmental entity. We are therefore of the belief that it is well within the power of the legislature to bar any punitive damages for a claim for wrongful discharge.

We recognize that some contend that full vindication of rights conferred by the Constitution requires a civil damages remedy as a deterrent to violations.[27] Indeed, Bivens itself proceeds from that rationale. But Bivens and its progeny proceed from the premise that the deterrent effect of personal liability of government officers is needed. The countervailing consideration in the context of employment decisions by public officials is that excessive exposure to civil liability will discourage innovation and promote stagnant leadership. The ITCA has resolved that issue in favor of limiting the individual liability of government employees. The Constitution does not mandate any specific remedy for violations, so balancing of these competing interests is a matter well within the power of the General Assembly.

### IV. Conclusion

In summary, we expressly decline to address whether termination of a public employee may give rise to a violation of the Indiana Constitution. If a violation of Section 9 can supply the invasion of a right necessary for a wrongful discharge claim, the civil damages remedy against the government for a wrongful discharge is limited by the ITCA, and the individual official is entitled to immunity and indemnity to the extent provided by the ITCA.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.

---

[27] See Rosalie Berger Levinson, Recognizing a Damage Remedy to Enforce Indiana's Bill of Rights, 40 Val. U. L. Rev. 1, 17-18 (2005); Friesen, supra, note 21, at 7-6.