724 F.Supp. 599 (1989)
TOWN OF SOUTH WHITLEY, WHITLEY COUNTY, INDIANA, Plaintiff,
v.
CINCINNATI INSURANCE COMPANY, Defendant.
Civ. No. F 88-358.
United States District Court, N.D. Indiana, Fort Wayne Division.
November 1, 1989.
*600 J. Frank Kimbrough, Wilks & Kimbrough, Fort Wayne, for plaintiff.
Thomas C. Ewing and James J. Shea, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for defendant.

ORDER
WILLIAM C. LEE, District Judge.
This matter is before the court on cross motions for summary judgment. Oral arguments were heard on August 17, 1989, at which time this court requested further briefing on the issue of the identity of the Town of South Whitley and the elected members of the Town's governing board with respect to Exclusion (h)(2) of the defendant's policy. Rebriefing of the issue was completed on September 8, 1989. For the reasons set forth below, defendant's motion for summary judgment will be granted.

Summary Judgment
Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the nonmoving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury *601 could reasonably find for the plaintiff." Id. 106 S.Ct. at 2512; Valentine v. Joliet Tp. High School Dist. No. 204, 802 F.2d 981, 986 (7th Cir.1986).
Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact," Celotex, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 106 S.Ct. at 2511.
Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. Id. 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. Id. The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. Id. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 106 S.Ct. at 2512.

Factual and Procedural Background
The plaintiff, the Town of South Whitley, is a governmental entity created under the laws of Indiana and is a citizen of the state of Indiana. The defendant, Cincinnati Insurance Company (CIC), is a citizen of the state of Ohio, having been incorporated under the laws of Ohio and having its principal place of business in Ohio.
CIC issued a three-year policy to South Whitley effective January 1, 1985. The policy was known as a commercial umbrella liability policy, bearing Policy No. CCC 289 42 31. The policy provided South Whitley with different types of excess casualty coverage for its governmental operations. The plaintiff made a demand upon the defendant pursuant to the policy to provide a defense and indemnification in a case brought against it by Darol Eldridge. This declaratory judgment action was filed by plaintiff as a result of defendant's denial of coverage.[1]
The civil action brought by Eldridge named the Town of South Whitley, its Board of Trustees and the Town Marshall as defendants. Eldridge alleged that the defendants illegally discriminated against him when they failed to hire him for the position of Deputy Town Marshall in Spring, 1986. Believing that he had been denied the job because of his age, the fifty-four year old Eldridge filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission (EEOC). After an investigation, the EEOC found merit in Eldridge's claim and issued a "Letter of Violation" against South Whitley on January 29, 1987. Eldridge filed his civil action in this United States District Court on March 14, 1988, claiming constitutional violations of due process and equal protection and violation of the Indiana Age Discrimination in Employment Act (ADEA).
The CIC insurance policy at issue contains the following pertinent provisions:
PART I  DEFINED WORDS AND PHRASES

*602 A. `You', `your', and `yours' mean a person or organization shown as the Named Insured in the declarations ...
G. `occurrence' means an accident, or a happening or event, or a continuous or repeated exposure to conditions which occurs during the policy period which unexpectedly or unintentionally results in personal injury, property damage or advertising liability. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence; ...
H. Personal Injury means:
(1) Bodily harm or injury, sickness, disease, disability, shock, fright, mental anguish or mental injury including care, loss of services or death arising out of these; ...
(3) Discrimination or humiliation; ...
K. `ultimate net loss' means the sum actually expended or payable in cash to procure settlement or satisfaction of the Insured's legal obligation for damages either by (1) final adjudication or (2) compromise with the written consent of the Company; ...
PART II  THE COVERAGE
A. We will pay
We will pay on behalf of the Insured the ultimate net loss for occurrences during the policy period in excess of the underlying insurance or for occurrences covered by this policy which are either excluded or not covered by underlying insurance because of Personal Injury, Property Damage, or Advertising Liability anywhere in the world.
B. THIS POLICY DOES NOT APPLY  EXCLUSIONS
* * * * * *
(h) to any liability for Personal injury arising out of discrimination including fines or penalties imposed by law, if (1) insurance coverage therefor is prohibited by law or statute, or (2) committed by or at your direction; ...
C. OUR DUTIES AND YOURS IN CLAIMS OR SUITS-DEFENSE, INVESTIGATION, SETTLEMENT, REIMBURSEMENT, ASSISTANCE AND COOPERATION
(a) With respect to such insurance as is afforded by this policy, if there is no underlying insurer obligated to do so, we shall have the right and duty to defend any suit against the Insured seeking damages on account of personal injury, property damage or advertising liability, even if any of the allegations of the suit are groundless, false or fraudulent and we may make such investigation and settlement of any claim or suit as we deem expedient, but we shall not be obligated to defend any suit after the applicable limit of our liability has been exhausted.
D. WHO IS AN INSURED  PERSONS OR ORGANIZATIONS WE WILL COVER
Each of the following is an Insured under this policy to the extent set forth below:
* * * * * *
(f) Any executive officer, director, other employee or stockholder of yours while acting within the scope of his duties as such.
CIC contends that the Town of South Whitley is not entitled to indemnification pursuant to the foregoing policy provisions. First, CIC argues that the policy provides coverage only for "unintentional" acts, and since all of the underlying claims made in the Eldridge case require a showing of "intentional" discrimination, there can be no basis for indemnification. Second, CIC argues that even if there is a claim by Eldridge based on "unintentional" discrimination, the discriminatory acts of which Eldridge complain were performed by the insured, and therefore, are excluded from coverage pursuant to Exclusion (h)(2).

Analysis
Eldridge's complaint against the Town of South Whitley involves three claims; one under 42 U.S.C. § 1983 for violation of the Due Process Clause of the Constitution, one under 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Constitution, and one for violation of *603 the Indiana Age Discrimination in Employment Act.
CIC is correct in its contentions that Eldridge's claims for constitutional violations brought pursuant to § 1983 require proof of discriminatory intent. Under existing federal law, a Due Process claim is treated as an intentional tort. Williams v. Boles, 841 F.2d 181, 183 (7th Cir.1988). A plaintiff making a due process claim must show that the intentional actions of the defendant caused a constitutional deprivation. Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Martin v. Tyson, 845 F.2d 1451, 1457 (7th Cir.) cert. denied, ___ U.S. ___, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988). Absent evidence of the defendant's intentional misconduct, there can be no Due Process violation. Equally true is the contention that there can be no Equal Protection violation absent evidence of the defendant's intentional misconduct. Federal jurisprudence has long recognized that "[t]he core of any equal protection case is, of course, a showing of intentional discrimination." Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 1719-20, 90 L.Ed.2d 69 (1986); Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1186 (7th Cir.1986). Not only is such conduct at the center of a § 1983 claim, but only intentional discrimination violates the Equal Protection Clause. Armstrong v. Chicago Park Dist., 693 F.Supp. 675, 678 (N.D.Ill.1988).
Therefore, CIC is not required to indemnify the Town of South Whitley for any liability which may be assessed against the town on Eldridge's § 1983 claims for violation of Due Process and Equal Protection. The clear language of the insurance policy at issue provides coverage only for acts "which unexpectedly or unintentionally" resulted in injury. Since any liability assessed against the Town of South Whitley on Eldridge's § 1983 claims would mean that the acts were intentional, coverage is precluded.
CIC's contention in regards to Eldridge's ADEA claim, however, is not correct. Defendant contends that Eldridge must show intentional discrimination by the Town of South Whitley in order to prevail on the state ADEA claim. The Indiana ADEA, I.C. § 22-9-2-1 et seq, was patterned after the Federal ADEA and is intended to provide coverage only where a plaintiff cannot proceed under the federal act. Helman v. AMF, Inc., 675 F.Supp. 1163 (S.D.Ind.1987). Case law applicable to the Federal ADEA is, therefore, equally applicable to the state statute. Federal courts have held that because Congress was guided by Title VII in passing the ADEA, cases interpreting Title VII are useful in interpreting the ADEA. See, Orman v. WLS-TV, 846 F.2d 448 (7th Cir. 1988). In Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Supreme Court held that a plaintiff need not necessarily prove intentional discrimination in order to establish that an employer has violated Title VII. In Leftwich v. Harris-Stowe State College, 702 F.2d 686 (8th Cir.1983), the court specifically held that the disparate impact analysis developed in Griggs, was applicable to ADEA cases. Most recently, in Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988), the Supreme Court expanded the scope of application of disparate impact analysis to include instances where employment decisions were made using subjective criteria. The Supreme Court stated:
[A] facially neutral practice, adopted without discriminatory intent, may have effects that are indistinguishable from intentionally discriminatory practices. It is true, to be sure, that an employer's policy of leaving promotion [and hiring] decisions to the unchecked discretion of lower level supervisors should itself raise no inference of discriminatory conduct. Especially in relatively small businesses like respondent's, it may be customary and quite reasonable simply to delegate employment decisions to those employees who are most familiar with the jobs to be filled and with the candidates for those jobs. It does not follow, however, that the particular supervisors to whom this discretion is delegated always act without discriminatory intent. Furthermore, *604 even if one assumed that any such discrimination can be adequately policed through disparate treatment analysis, the problem of subconscious stereotypes and prejudices would remain ...If an employer's undisciplined system of subjective decision-making has precisely the same effects as a system pervaded by impermissible intentional discrimination, it is difficult to see why Title VII's [or ADEA's] proscription against discriminatory actions should not apply ... We conclude, accordingly, that subjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases.
Id. 108 S.Ct. at 2786-87. It is clear that Eldridge can prevail on his ADEA claim without a showing of intentional discrimination, and therefore, coverage for the Town of South Whitley is not precluded by the exclusion of intentional acts from the policy.
This does not resolve the summary judgment issue. CIC also contends that since the alleged discriminatory conduct was done "by the insured" through the acts of its Town board, Exclusion (h)(2) precludes coverage regardless of whether the discrimination was intentional or not. The Town of South Whitley, however, contends that the Town board is not the same as the Town itself, and since the allegedly discriminatory hiring decision was made by the Town board, coverage is not precluded by Exclusion (h)(2).
In construing a policy of insurance, "every word ... should, when possible, have assigned to it some meaning ..." Aetna Life Ins. Co. v. Doerr, 74 Ind.App. 35, 115 N.E. 700, 702 (1917). Exclusion (h)(2) states that the policy does not apply to any liability for personal injury arising out of discrimination "committed by or at your discretion". The definition of "your" in the policy is "a person or organization shown as the Named Insured in the declarations." The only named insured is the Town of South Whitley.
The affidavits of the Town board members clearly illustrate that they were acting as the Town of South Whitley when they decided not to hire Eldridge. The Board of Trustees is the highest municipal authority of the Town of South Whitley. The Board oversees all the business of the Town of South Whitley. The Board has responsibility for protecting the public funds and expenditure of tax dollars. The Board has the ultimate authority in hiring and firing decisions for the Town employees. The Board sets the salaries for the Town employees.
Indiana statutes also support the conclusion that the Town of South Whitley is its Town Board. Indiana Code § 36-5-2-2 states:
The board of trustees elected under IC 3-10-6 or IC 3-10-7 is the town legislative body. The president of the board of trustees selected under section 7 of this chapter is the town executive.
Indiana Code § 36-5-2-9 provides that:
The legislative body may:
(1) adopt ordinances and resolutions for the performance of functions of the town;
(2) purchase, hold, and convey any interest in property, for the use of the town; and
(3) adopt and use a common seal.
Under this statutory framework, the Town Board possesses all of the Town of South Whitley's legislative and executive powers. The Town of South Whitley can only act or make executive decisions through its Town Board. Therefore, the action of the Board in deciding not to hire Eldridge was the action of the Town of South Whitley. See, Riddlestorffer v. City of Rahway, 82 N.J. Super. 423, 197 A.2d 883, 885 (1964); State, ex rel, Johnson Township v. Arnold, 38 Ind. (Black) 41, 45-46 (1871).
In addition, for purpose of § 1983 liability, Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978), requires this court to look to state law in determining who holds the municipality's final decisionmaking authority. The aforementioned statutes clearly place that authority within the power of the Town board. As such, the Town Board *605 is the Town of South Whitley for purposes of § 1983 liability.
The alleged discriminatory act at issue in the Eldridge case is the Town Board's failure to hire Eldridge because of his age. This act, as demonstrated above, was clearly the act of the Town of South Whitley. Accordingly, Exclusion (h)(2) precludes coverage under CIC's umbrella liability policy issued to the Town of South Whitley.

Conclusion
Based on the foregoing, CIC's motion for summary judgment is hereby GRANTED.
NOTES
[1] CIC has agreed to provide a defense for the plaintiff in the Eldridge case. This order will, therefore, only discuss CIC's obligation to indemnify the plaintiff if a judgment is rendered against it in the Eldridge case.