ATTORNEY FOR APPELLANT
Raymond J. Hafsten, Jr.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Deborah B. Trice
Karen R. Orr
Lafayette, Indiana

# In the
# Indiana Supreme Court

No. 79S05-0508-CV-354

MICHAEL B. MONTGOMERY,

Appellant (Plaintiff below),

v.

THE BOARD OF TRUSTEES OF
PURDUE UNIVERSITY,

Appellee (Defendant below).

Appeal from the Tippecanoe Superior Court, No. 79D01-0305-CT-36
The Honorable Randy Williams, Judge Pro Tempore

On Petition To Transfer from the Indiana Court of Appeals, No. 79A05-0411-CV-591

**June 29, 2006**

**Boehm, Justice.**

We hold that units of state government with twenty or more employees are subject to the federal Age Discrimination in Employment Act and therefore are not governed by the Indiana Age Discrimination Act. We also hold that there is no private civil damage remedy under the Indiana Age Discrimination Act.

**Facts and Procedural History**

Purdue University employed Michael Montgomery from 1973 until he was terminated in 2002 at the age of 57 or 58. In May 2003, Montgomery sued Purdue's Board of Trustees ("Purdue") in Tippecanoe Superior Court alleging that the Indiana Age Discrimination Act ("IADA") "creates a public policy exception to employment at will" and that Montgomery's termination was because of his age and therefore in violation of the Act.

Purdue moved to dismiss the complaint for failure to exhaust administrative remedies and failure to state a claim upon which relief can be granted. The trial court entered judgment on the pleadings for Purdue without indicating the basis for its judgment. The Court of Appeals affirmed, concluding that Montgomery's complaint failed to state a claim. Montgomery v. Bd. of Trs. of Purdue Univ., 824 N.E.2d 1278, 1282-83 (Ind. Ct. App. 2005). We granted transfer. 841 N.E.2d 181 (Ind. 2005).

## I. "Employers" under the Indiana Age Discrimination Act

The IADA prohibits discrimination by "employers" on the basis of age. A "governmental entity which is subject to the federal Age Discrimination in Employment Act" ("ADEA"), 29 U.S.C. § 621, et. seq., is specifically excluded from the definition of "employer" in Indiana's act. Ind. Code § 22-9-2-1 (2004). The parties agree that Purdue is a "governmental entity." Accordingly, if Purdue is "subject to" the ADEA, the trial court properly concluded that Montgomery had no claim under the IADA.

The parties agree that Purdue meets the statutory definition of "employer" under the ADEA,[1] and is required to comply with the ADEA's substantive provisions. In this sense, Purdue is plainly "subject to" the ADEA. Montgomery argues, however, that there is no private civil remedy against a state agency under the ADEA and therefore Purdue, admittedly an arm of the State, is not "subject to" the ADEA as that term is used in the IADA. Specifically, Montgomery argues that Purdue is not "subject to" the federal ADEA: because (1) the Eleventh Amendment shields state agencies from private actions for monetary damages under the ADEA and (2) enforcement of the ADEA against state agencies through other mechanisms is "rarely

---

[1] "Employer" includes "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency." 29 U.S.C. § 630(b) (2000).

2

pursued" and "meaningless." For the reasons explained below, we conclude that Purdue and other arms of Indiana government are subject to the ADEA and therefore are not "employers" subject to the IADA.

A. *ADEA Enforcement Mechanisms and Remedies*

The ADEA has two primary enforcement mechanisms. Under the Fair Labor Standards Act ("FLSA") provisions incorporated by reference into the ADEA, the Equal Employment Opportunity Commission ("EEOC") can bring suit on behalf of an aggrieved individual for injunctive and monetary relief. 29 U.S.C. § 626(b). The incorporated FLSA provisions, in concert with section 626(c) of the ADEA, also authorize private civil actions "for such legal or equitable relief as will effectuate the purposes of this Act." Id. at § 626(b), (c). A private civil action may not be commenced until 60 days after a charge of discrimination has been filed with the EEOC,[2] and if the EEOC exercises its discretion to bring suit, no private suit may be brought unless the aggrieved individual has already filed a private action. Id. at § 626(c)(1), (d). Whether the plaintiff is a private individual or the EEOC, if a trial court finds a violation of the ADEA, the statute authorizes the court to "grant such legal or equitable relief as may be appropriate" including without limitation "judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts owing to a person" as a result of a violation of the Act. Id. at § 626(b). Liquidated damages are payable only for willful violations of the Act. Id.

B. *The Eleventh Amendment*

The Eleventh Amendment to the Constitution of the United States provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

---

[2] In jurisdictions where a state or local agency is authorized to "grant or seek relief" under state law prohibiting age discrimination in terms similar to the federal ADEA (called a "deferral" agency), a charge must be filed with both the EEOC and the state/local agency. 29 U.S.C. §§ 626(d), 633(b). In such instances, the charge must be filed with the EEOC within 300 days of the alleged discriminatory act. Id. at § 626(d)(2). In jurisdictions that do not have a state or local agency charged with enforcing state law prohibiting age discrimination in terms similar to the federal ADEA, a charge must be filed with the EEOC within 180 days of the alleged act of discrimination. Id. at § 626(d)(1). The EEOC considers Indiana to be in the (d)(1) category. See Indianapolis EEOC District Office website, <http://www.eeoc.gov/indianapolis/timeliness.html>.

This Amendment was adopted in 1798 in response to <u>Chisholm v. Georgia</u>, 2 U.S. 419 (1793), which upheld a common law action for assumpsit brought by two South Carolinians against the State of Georgia to collect a revolutionary war debt. Georgia had refused to appear, claiming that federal courts could not hear suits against a sovereign State, but the Supreme Court affirmed a default judgment for the plaintiffs.

Recent Supreme Court precedent has made clear that the Eleventh Amendment has a broader reach than merely stripping federal courts of jurisdiction over claims against one State by citizens of another. Rather, the Amendment reflects the constitutional principle that a State may not be sued in federal court without its consent whether the suit is brought by a foreign citizen, a citizen of another state, or the state's own citizens. <u>See</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 98 (1984) ("the principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III"). This doctrine applies to federal legislation that is grounded in the Commerce Clause or any of Congress' other enumerated Article I powers. <u>See, e.g.</u>, <u>Nev. Dep't of Human Res. v. Hibbs</u>, 538 U.S. 721, 727 (2003). Moreover, <u>Alden v. Maine</u>, 527 U.S. 706, 754 (1999) established that Congress may not subject unconsenting States to suit in a state court under legislation passed pursuant to Congress' Article I powers. Thus, even though there may be concurrent state and federal court jurisdiction over claims asserting rights under a federal statute, a State may not be sued in either federal or state court without its consent under a federal statute grounded in Article I powers. The Court explained that states' Eleventh Amendment immunity is a "convenient shorthand but something of a misnomer, for sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." <u>Id.</u> at 713. Instead, that immunity stems from "the structure of the original Constitution itself" which incorporated the traditional understanding that a sovereign was not subject to suit without its consent. <u>Id.</u> at 728. The <u>Alden</u> majority explained that until <u>Chisholm</u>, "the Constitution was understood, in light of its history and structure, to preserve the States' traditional immunity from private suits. As the [Eleventh] Amendment clarified the only provisions of the Constitution that anyone had suggested might support a contrary understanding, there was no reason to draft with a broader brush." <u>Id.</u> at 724. Thus, though the Eleventh Amendment speaks only of states' immunity from suit in federal court, the "original constitutional design" which the Amendment acted "to restore" embraced the fundamental structural

4

principle that unconsenting states are shielded from private suits under federal law in their own courts as well as in the federal courts. Id. at 722.

Congress' Article I powers cannot support a claim against a State because the sovereign immunity reflected in the Eleventh Amendment trumps "antecedent provisions of the Constitution." Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 66 (1996) (internal quotations omitted). Congress may, however, abrogate unconsenting States' sovereign immunity by exercising its power under Section 5 of the Fourteenth Amendment which authorizes Congress to enforce the provisions of the Fourteenth Amendment by "appropriate legislation." See, e.g., Hibbs, 538 U.S. at 726. In Kimel v. Florida Board of Regents, 528 U.S. 62, 91 (2000), however, the Court concluded that the ADEA was not an exercise of Congress' power under Section 5 of the Fourteenth Amendment and therefore the provisions of the ADEA authorizing state employees to sue their state employers in federal or state court for monetary damages violated the Eleventh Amendment. Purdue and Montgomery agree that Kimel precludes a claim for monetary damages under the ADEA by state employees against their unconsenting state employers.

Indiana has not consented to suit under the ADEA by enacting the IADA. As we explain more fully in Part II of this opinion, the IADA, though prohibiting discrimination in employment in terms similar to the ADEA, does not authorize aggrieved employees to bring private civil actions against their employers. Moreover, even if the IADA authorized private civil actions against state agencies, it would not constitute consent to suit by private individuals under the ADEA. Waiver of Eleventh Amendment sovereign immunity by the states must be express, unequivocal and voluntary. Edelman v. Jordan, 415 U.S. 651, 673 (1974). It must be done "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." Id. (internal quotations omitted). The IADA contains no express and unequivocal language by which Indiana consents to suits for damages brought by aggrieved state employees under the federal ADEA.[3]

---

[3] See Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 332 (5th Cir. 2002) (Texas' waiver of sovereign immunity under the Texas Labor Code did not constitute a waiver of Eleventh Amendment immunity for claims brought in federal court under Title I of the Americans with Disabilities Act ("ADA") because the Texas Labor Code contained no "clear and unequivocal" waiver with respect to the ADA or federal court.); Lopez v. Police Dep't of the Commonwealth of Puerto Rico, 247 F.3d 26, 29 (1st Cir. 2001) (Puerto Rico's disability discrimination law had not waived Puerto Rico's Eleventh Amendment immu-

C. *State Agencies as "Subject to" the ADEA*

Montgomery argues that state employers such as Purdue are not "subject to" the ADEA because they are shielded from private suits for monetary damages by the Eleventh Amendment and because other enforcement mechanisms are not "meaningful." Purdue concedes that absent consent by the State, the Eleventh Amendment bars private litigants from seeking monetary damages from state agencies under the ADEA. Purdue argues that state agencies are nonetheless "subject to" the ADEA because employees can obtain injunctive relief against state agencies. Moreover, the EEOC, as an arm of the federal government, is not subject to the Eleventh Amendment and can seek both monetary and non-monetary remedies against state agencies. See, e.g., Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 374 n.9 (2001); State Police for Automatic Ret. Ass'n v. DiFava, 317 F.3d 6, 12 (1st Cir. 2003).

In support of his contention that the ADEA provides no meaningful remedy, Montgomery notes that the EEOC's decision to bring a legal action for monetary or injunctive relief on behalf of an aggrieved individual is discretionary. He argues that the EEOC "rarely" exercises this discretion citing annually published statistics comparing the number of substantiated administrative charges and the number of those charges the EEOC chooses to pursue in court. We find this argument unpersuasive. Whether the enforcement mechanism is vigorous or not, there is no question that the ADEA's substantive requirements apply to Purdue and other state agencies. All taxpayers are subject to the Internal Revenue Code even if less than two percent are subject to audit. Even if we assume lax or nonexistent enforcement, state employers are similarly "subject to" the ADEA. Moreover, the remedial provisions of the ADEA place the EEOC in a central role. The "statutory structure [of the ADEA] plainly gives the EEOC the dominant role in enforcing the ADEA" and "ADEA private lawsuits therefore are secondary in the statutory scheme to administrative remedies and suits brought by the [EEOC]." EEOC v. Pan Amer. World Air-

---

nity from suit under the ADA: "While [Puerto Rico] prohibits employment discrimination on the basis of disability in a similar fashion as the ADA, there is no specific language indicating that Puerto Rico intends to make itself subject to damages suits in federal court for disability-based employment discrimination."). Compare Holliday v. WSIE 88.7 FM Radio Station, 2005 U.S. Dist. LEXIS 32725, at *10 (S.D. Ill. Dec. 7, 2005) (Illinois consents to suits for damages under the federal ADEA where state law (745 ILCS 5/1.5(a)) provides "An employee . . . aggrieved by any conduct or action or inaction of the State that would constitute a violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621 et seq., as amended, if committed by an employer covered by that Act may bring an action under the Age Discrimination in Employment Act of 1967 against the State in State circuit court or federal court.").

ways, Inc., 897 F.2d 1499, 1505 (9th Cir. 1990). As a result, state agencies subject to EEOC enforcement are "subject to" the ADEA as that term is used in the IADA.

Montgomery also contends that private lawsuits seeking injunctive relief against state employers do not provide a "meaningful" remedy for violations of the ADEA and therefore state employers are not "subject to" the ADEA. Montgomery first argues that the Eleventh Amendment bars not only claims for money damages, but also private civil actions for injunctive relief against the State. This is technically correct, but under the doctrine announced in Ex Parte Young, 209 U.S. 123 (1908), the Eleventh Amendment does not shield state officials from private lawsuits seeking declaratory and injunctive relief. This has been found by at least some federal courts to allow private injunctive action under the ADEA. See, e.g., DiFava, 317 F.3d at 12 ("Neither Kimel, nor the Eleventh Amendment jurisprudence, prevents individuals . . . from obtaining injunctive relief against a state based upon the ADEA pursuant to Ex Parte Young"). And several post-Kimel cases hold that the Eleventh Amendment does not bar private actions for injunctive relief, including reinstatement, against state officials.[4] Montgomery cites Miranda v. University of Maryland, 2005 U.S. Dist. LEXIS 3944 (S.D. Md. Feb. 9, 2005), where the federal district court dismissed the plaintiff's ADEA claims for injunctive relief. The court noted that although Ex Parte Young allows a suit seeking injunctive or declaratory relief against state officials for prospective equitable relief from ongoing violations of federal law, the "only defendant Miranda sued was the University of Maryland, College Park. Consequently, the Ex Parte Young exception is inapplicable." 2005 U.S. Dist. LEXIS 3944, at *20. Miranda does not exempt the ADEA from the Ex Parte Young doctrine. It merely establishes that aggrieved employees who want to pursue that remedy must identify the correct defendant (state officials as opposed to the State itself) in their pleadings.

Finally, Montgomery argues that private action to compel equitable reinstatement by state officials is a "meaningless" and "illusory" remedy because the decision whether to grant reinstatement is within the discretion of the trial judge and is based on equitable considerations such

---

[4] See Meekison v. Voinovich, 2003 U.S. App. LEXIS 12545, at **3-4 (6th Cir. June 18, 2003); Galli v. Morelli, 2003 U.S. Dist. LEXIS 15138, at *3 (S.D. Ohio Aug. 20, 2003); Vizcarrondo v. Bd. of Trs. of Univ. of Puerto Rico, 139 F. Supp. 2d 198, 202 (D.P.R. 2001); Gill v. Pub. Employees Ret. Bd., 90 P.3d 491, 502 (N.M. 2004); Molnar v. Klammer, 2005 Ohio App. LEXIS 6227, at **43-44 (Ohio Ct. App. Dec. 23, 2005).

as the availability of positions. See Price v. Marshall Erdman & Assoc., Inc., 966 F.2d 320, 325-26 (7th Cir. 1992). At bottom, this is an argument that state employers are not "subject to" the ADEA because a court may find other factors to outweigh the requested relief. This is a risk with any enforcement scheme. It does not render the law a nullity to say that it may not accomplish all that some plaintiffs think desireable.

In sum, the ADEA's substantive protections for state employees are enforceable through private actions for injunctive relief and direct enforcement by the EEOC. If the law imposes standards of conduct on state employers, they are "subject to" it. The fact that some remedies may be constitutionally barred does not change this result. Accordingly, we hold that state employers, including Purdue, are "government entities" "subject to" the federal ADEA. We therefore also hold that they are not statutory "employers" under section 1 of Indiana's Age Discrimination Act and affirm the trial court and Court of Appeal's dismissal of Montgomery's IADA wrongful dismissal claim under Trial Rule 12(B)(6).

## II. Civil Lawsuits Under the Indiana Age Discrimination Act

Montgomery's suit for money damages under the IADA fails for a second reason. The IADA does not expressly authorize aggrieved employees to bring civil actions for monetary damages against their employers. Montgomery acknowledges this, but nonetheless urges this Court to recognize a private civil action under Frampton v. Central Indiana Gas Company, 260 Ind. 249, 253-54, 297 N.E.2d 425, 428 (1973). Purdue responds that recognition of a new exception to the doctrine of employment-at-will is best left to the General Assembly and that recognition of an exception here would ignore the existing administrative complaint process expressly adopted in the IADA.

Section 2 of the IADA declares that it is "an unfair employment practice" and "against public policy to dismiss from employment, or to refuse to employ or rehire, any person solely because of his age if such person has attained the age of forty (40) years and has not attained the age of seventy (70) years." I.C. § 22-9-2-2 (2004).[5] Sections 5, 6, and 7 set out an informal administrative process for investigating and resolving charges of discrimination under the Act.

---

[5] The upper age limit of the protected class was raised from sixty-five to seventy in 1979. See P.L. 206 § 3 (1979).

Section 5 requires the Commissioner of Labor to receive and investigate all charges of discrimination under the Act. If the Commissioner makes a preliminary determination that the employer is engaging in unfair employment practices, under section 6, the Commissioner is required to attempt to eliminate these practices by "informal methods of conference, conciliation and persuasion." If voluntary compliance cannot be obtained, the Commissioner may issue a complaint and hold a hearing at which the employer may present evidence and examine witnesses. I.C. § 22-9-2-6. If the Commissioner determines that unfair practices were committed, the Commissioner is required to state findings of fact. Id. Under section 7, if the Commissioner concludes that no probable cause exists to support the charges, the Commissioner must state findings of fact in writing and issue an order dismissing the complaint. Neither the Commissioner, nor the aggrieved employee, is expressly authorized under the statute to take judicial action if the charge of discrimination is substantiated. No authority has directly addressed what remedies are available to aggrieved employees under the IADA. Our research reveals only six cases in which state or federal courts have addressed the IADA, only five of which are relevant here. On two occasions federal district courts have concluded that the IADA provides no private right of action to an aggrieved employee,[6] and two other federal cases and a state case have ruled on motions for summary judgment, dismissal, or to correct errors without addressing the question of remedies.[7]

Indiana generally follows the employment-at-will doctrine that permits both the employer and the employee to terminate the employment at any time for a "good reason, bad reason, or no reason at all." See, e.g., Cantrell v. Morris, 2006 Ind. LEXIS 514, at *13 (Ind. June 21, 2006); Sample v. Kinser Ins. Agency, Inc., 700 N.E.2d 802, 805 (Ind. Ct. App. 1998). There are limits to this doctrine, however. Frampton held that an employee who has been terminated for filing a worker's compensation claim may sue for damages. 260 Ind. at 253-54, 297 N.E.2d at 428. And McClanahan v. Remington Freight Lines, Inc., 517 N.E.2d 390, 393 (Ind. 1988), upheld a wrongful discharge claim for damages by a truck driver who alleged he was fired for refusing to violate Illinois state weight limits. These cases have been generalized to the proposition that an

---

[6] See Hague v. Thompson Distribution Co., Inc., 2005 U.S. Dist. LEXIS 7509, at *21 (S.D. Ind. 2005); Helman v. AMF, Inc., 675 F. Supp. 1163, 1164-65 (S.D. Ind. 1987).
[7] See Town of S. Whitley v. Cincinnati Ins. Co., 724 F. Supp. 599, 605 (N.D. Ind. 1989); Keitz v. Lever Bros. Co., 563 F. Supp. 230, 235 (N.D. Ind. 1983); Pierce v. Fort Wayne Bd. of Pub. Safety, 155 Ind. App. 348, 351, 292 N.E.2d 857, 859 (1973), trans. denied.

9

employee who has been fired for exercising a statutory right or for refusing to violate the law has a claim for wrongful discharge. Ind. Legal Encyclopedia, Employment § 45 (West 2001).

Montgomery advances several arguments in support of recognition of an age discrimination exception to employment-at-will. First, he argues that the General Assembly intended to authorize private civil actions because section 2 of the IADA declares that age discrimination in employment violates public policy. General expressions of public policy do not support new exceptions to the employment-at-will doctrine. See McClanahan, 517 N.E.2d at 393. Moreover, the legislative history of the IADA does not support Montgomery's argument that the General Assembly intended to create a private cause of action for monetary damages under the IADA. As originally enacted in 1965, section 1 of the IADA defined "employer" to include persons employing one or more individuals, labor organizations, and the state and all its political subdivisions. Various religious, fraternal, and social groups were expressly excluded from the definition of "employer." 1965 Ind. Acts ch. 368, § 1. The federal ADEA was enacted two years later in 1967. It defined "employer" as those with twenty-five or more employees.[8] The United States, corporations wholly owned by the United States, and States and their political subdivisions were expressly excluded from the definition of "employer" in the original version of the ADEA. Pub. L. No. 90-202, § 11(b) (1967).

In 1974, amendments to the ADEA lowered the threshold number of employees for private employers from twenty-five to twenty and for the first time applied the ADEA to state and federal governmental units. Pub. L. No. 93-259, § 28(a)(1)-(2) (1974). No minimum number of employees was set for a governmental entity but a minimum of twenty has been supplied by court decision. Thus, states and their political subdivisions, like their counterparts in the private sector, are not covered "employers" under the ADEA unless they employ at least twenty employees for twenty weeks in the current or preceding calendar year. See Palmer v. Ark. Council on Econ. Educ., 154 F.3d 892, 896 (8th Cir. 1998); EEOC v. Monclova Township, 920 F.2d 360, 363 (6th Cir. 1990); Kelly v. Wauconda Park Dist., 801 F.2d 269, 273 (7th Cir. 1986).

---

[8] The ADEA defines "person" as "one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized group of persons." 29 U.S.C. § 630(a) (2000). As originally enacted in 1967, "employer" was defined as "a person engaged in an industry affecting commerce who has twenty-five or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year" and any agent of such person. Pub. L. No. 90-202, § 11(b) (1967).

In 1979 the Indiana General Assembly amended the IADA to introduce the provision relevant in this case, excluding from "employer" any "person or governmental entity which is subject to" the ADEA. P.L. 206 § 3 (1979). After 1979 the IADA applied only to employment relationships not governed by the federal ADEA, i.e. public and private employers with fewer than twenty employees. See Town of S. Whitley, 724 F. Supp. at 603 (The purpose of the IADA is "to provide coverage only where a plaintiff cannot proceed under the federal act.").

The General Assembly's decision in 1979 to continue to provide protection under the IADA to employees working for small public and private employers does not suggest a desire to provide these employees the same remedies for unlawful discrimination as are afforded by the ADEA. First, since its enactment in 1965, the IADA has never expressly provided for enforcement through private judicial action. By contrast, the ADEA, from its inception in 1967, has specifically provided for judicial enforcement by both private litigants and the United States. The ADEA exemption of employers with fewer than twenty employees expressed a policy that the cost of complying with the ADEA and defending against ADEA suits would be excessively burdensome for small businesses. Morelli v. Cedel, 141 F.3d 39, 45 (2d Cir. 1998) (reasons for ADEA's minimum employee requirement include "the burdens of compliance and potential litigation costs, the protection of intimate and personal relations existing in small businesses, [and] potential effects on competition and the economy . . ."). (internal quotations omitted). We think a fair reading of the IADA demonstrates a similar concern. Since 1965 the IADA has never expressly provided for private judicial enforcement, and has relied instead on administrative methods of resolution. We see nothing in the Indiana legislation to suggest that only the small employers to which it now applies should be subject to civil litigation to greater extent than the ADEA provides for larger employers. To the contrary, this enforcement scheme seeks to strike a balance between protection of employees and legitimate concerns of small businesses by limiting its enforcement mechanisms to those set forth in the statute.

We find Montgomery's remaining arguments equally unpersuasive. The Indiana Civil Rights Law ("ICRL"), Indiana Code sections 22-9-1-1 through 22-9-1-18, prohibits discrimination in employment on the basis of race, religion, color, sex, disability, national origin or ancestry and applies to most private and public employers in Indiana. I.C. §§ 22-9-1-2, 22-9-1-3. The ICRL expressly authorizes civil suits by private litigants and sets out procedural prerequisites to

11

bringing suit not unlike those provided by the federal ADEA. I.C. §§ 22-9-1-16, 22-9-1-17. Montgomery argues that the General Assembly intended to create an exception to employment-at-will because the IADA, unlike the ICRL, places no restrictions on civil actions by individual employees. To the contrary, we think the IADA's silence as to civil remedies, in contrast with the ICRL, reflects the General Assembly's intentional decision to provide a separate scheme for age discrimination. Discrimination is subject to broader remedies if it is based on race, religion, color, sex, disability, national origin or ancestry, all of which are addressed in the ICRL. Indeed, the ICRL had been in place for four years when the IADA was enacted. Age was not simply added to the list of classes protected by the ICRL. We think this legislative history is persuasive evidence that the General Assembly chose to combat age discrimination primarily through administrative remedies rather than the broader remedies afforded by the ICRL.

Montgomery also urges this Court to recognize an exception to employment-at-will based on Kimel. He cites the following passage:

> State employees are protected by state age discrimination statutes, and may recover money damages from their state employers, in almost every State of the Union.* Those avenues of relief remain available today, just as they were before this decision.

528 U.S. at 91-92. The asterisk calls to an unnumbered footnote citing statutes from many states, including Indiana Code section 22-9-2-1, et seq. Montgomery argues that this footnote establishes that the IADA creates a private cause of action for monetary damages against state employers. As Montgomery acknowledges, the Kimel footnote is dicta addressing a provision of Indiana state law. It is not binding on this Court, and for the reasons given above we find no private money damage remedy is available under the IADA.

Finally, Montgomery argues that without recognition of a private civil action, the IADA is "meaningless" because the Commissioner of Labor has no judicial enforcement powers under the IADA. The Commissioner of Labor is authorized to resolve allegations of discrimination through informal conciliation. We leave for another day determination whether the IADA also provides for judicial enforcement by the Commissioner of Labor under any circumstances. Today we hold only that whether broader enforcement mechanisms should be conferred upon pri-

12

vate litigants is a policy judgment, and any change in that aspect of the IADA's remedial scheme must come from the General Assembly.

## Conclusion

We conclude that Purdue is subject to the ADEA and is therefore exempt from the IADA, and also that the IADA does not provide for private civil actions. For these reasons, the trial court properly dismissed Montgomery's complaint for wrongful dismissal under the IADA for failure to state a claim. The judgment of the trial court is affirmed.


Shepard, C.J., Dickson and Sullivan, JJ. concur.

Rucker, J., dissents with separate opinion.

**Rucker, J., dissenting.**

I respectfully dissent. Mr. Montgomery is ensnarled in a trap that can best be characterized as a "Catch-22."[1] He was fired from his job because of his age and seeks relief under Indiana's Age Discrimination Act. The majority says he is entitled to no such relief because his remedy is with the Federal Act. But <u>Kimel</u> teaches that persons like Mr. Montgomery must seek relief under state statutes. Indeed <u>Kimel</u> itself identified Indiana as among a majority of states in which "employees are protected by state age discrimination statutes, and may recover money damages from their state employers . . . ." <u>Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 91 (2000). So here we have an employee fired because of age but in effect has no remedy, according to today's opinion, despite both state and federal legislation designed to protect employees fired because of age. Certainly the legislature could not have intended the result reached in this case.

---

[1] A "Catch-22" is generally understood as a no-win situation or paradox. The title of a novel, the term referred to a fictional Air Force rule which regarded a pilot who continued to fly combat missions without asking for relief as insane and therefore exempt from flight duty, but deemed the pilot sane enough to continue flying as soon as he did make such a request. This paradox inspired one of the novel's characters to proclaim, "That's some catch, that Catch-22." Joseph Heller, <u>Catch–22</u> 46 (1961).

1